IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01539-REB-CBS

CAROL A. GROVE,
        Plaintiff,
v.

KAREN MCGILL,
JAMES MOORE,
ALEX MEDINA, and
ERIC ROSENFELDT,
        Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on the "Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1)."  Pursuant to the Order Referring Case  dated August 1, 2012 (Doc. # 8) and the memorandum dated April 17, 2013 (Doc. # 35), this matter was referred to the Magistrate Judge.  The court has reviewed the Motion, "Plaintiff's Motion to Strike Defendants['] Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(f)" (filed February 21, 2012) (Doc. # 23) (treated by the court as a response to the Motion (*see* Doc. # 46)), Ms. Grove's "Opposition" to the Motion (filed June 27, 2013) (Doc. # 47), Defendants' Reply (filed July 15, 2013) (Doc. # 48), the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.      Statement of the Case

 Proceeding *pro se*, Ms. Grove filed her original Complaint on June 13, 2012.  (*See* Doc. # 1).  With permission from the court, on March 8, 2013 she filed her Amended Complaint ("AC"), entitled "Amended Complaint for Damages, Civil Rights Violations."  (*See* Doc. # 26).

Ms. Grove's residence at 6500 W. Mansfield Ave. # 1 in Denver, Colorado was sold at a Public Trustee foreclosure sale. Wells Fargo Bank, N.A ("Wells Fargo") held valid legal title to the property by virtue of a Public Trustee's Deed. Wells Fargo served Ms. Grove with a demand for possession of the property. On May 2, 2012, the Denver County Court entered a judgment for possession of the property against Ms. Grove. (*See* Writ of Restitution, Exhibit A to Defendants' Motion (Doc. # 34-1)). On May 7, 2012, the Denver County Court issued a Writ of Restitution authorizing the Denver County Sheriff to "dispossess" Ms. Grove "and to deliver possession of the Property" to Wells Fargo. (*See id.*). An eviction notice was posted at the property on May 8, 2012. Ms. Grove alleges that Defendants "and at least 10 workers from Cowboy Moving and Storage Company" arrived at the property on May 17, 2012. (*See* Doc. # 26 at ¶ 8). Ms. Grove's AC arises from events that occurred on May 17, 2012.

Ms. Grove alleges that Defendants violated her constitutional rights and state tort law. She brings her First, Second, and Third Claims for Relief pursuant to 42 U.S.C. § 1983 for: (1) "Unreasonable search and seizure of Plaintiff's property," (2) "First Amendment Freedom of Expression," and (3) First Amendment: Freedom of Expression; assault and Battery." (*See* Doc. # 26 at ¶¶ 18-27). She alleges violation of her "1st, 4th, 8th, 9th, and 14th" amendment rights. (*See* Doc. # 26 at ¶ 7). She brings her Fourth and Fifth Claims for Relief for "Negligence" and ""Intentional infliction of Mental Distress," presumably pursuant to Colorado common law. (*See* Doc. # 26 at ¶¶ 28-34). Ms. Grove seeks compensatory and punitive damages. (*See id.* at 8 of 10).

II.    Standard of Review

Defendants move to dismiss the AC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Dismissal under Rule 12(b)(1) is not a judgment on the

merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). Defendants' argument that Ms. Grove's state law claims due to her failure to file a written notice pursuant to the Colorado Governmental Immunity Act ("CGIA"), Colo. Rev. Stat. § 24–10–109, constitutes a challenge to subject matter jurisdiction. *See Maestas v. Lujan*, 351 F.3d 1001, 1014 (10th Cir. 2003) ("Complying with the notice of claim is a jurisdictional prerequisite to suit.") (quoting *Gallagher v. Board of Trustees for University of Northern Colorado*, 54 P.3d 386, 390-91 (Colo. 2002)); *Bird v. Pioneers Hospital*, 121 F. Supp. 2d 1321, 1326-27 (D. Colo. 2000) (compliance with these requirements is a jurisdictional prerequisite for any action against a public entity or its employees.).

Fed. R. Civ. P. Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 550 U.S. at 556. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Because Ms. Grove appears *pro se*, the court reviews her "pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) (court's role is not to act as pro se litigant's advocate); *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court

may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

III.     Analysis

A.     Constitutional Claims

Ms. Grove brings three claims pursuant to 42 U.S.C. § 1983.  (*See* Doc. # 26 at ¶¶ 18-27).  Section 1983 provides a civil cause of action for individuals who are deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting "under color of law." *Adickes v. SH Kress & Co.*, 398 U.S. 144, 147, 150 (1970).  Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979).  "In order to successfully state a cause of action under section 1983, [Plaintiff] must allege . . . the deprivation of a federal right and that the alleged action was taken under color of state law." *Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1265 (10th Cir. 1998) (internal quotation marks and citation omitted).

1.     Ninth Amendment Claim

To the extent that Ms. Grove alleges violation of the Ninth Amendment (*see* Doc. # 26 at ¶), the Ninth Amendment provides: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. "[T]he Ninth Amendment has not been judged to be a source of individual rights for purposes of stating a claim." *Zhao v. United States*, 91 Fed. Cl. 95, 99 n.4 (Fed. Cl. 2010) (citations omitted).  *See also Jenkins v. C.I.R.*, 483 F.3d 90, 92 (2d Cir. 2007) ("The Ninth Amendment is not an independent source of individual rights. . . .");  *Gibson v. Matthews*, 926 F.2d 532, 537

(6th Cir. 1991) (Ninth Amendment does not confer substantive rights other than "those conferred by other portions of our governing law"). Ms. Grove fails to state a claim to which relief can be granted under the Ninth Amendment.

    2.    Eighth Amendment Claim

    To the extent that Ms. Grove alleges violation of the Eighth Amendment to the U. S. Constitution (*see* Doc. # 26 at ¶ 7), the Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Eighth Amendment prohibits barbaric punishment and sentences disproportionate to the crime committed." *United States v. Newsome*, 898 F.2d 119, 121-22 (10th Cir. 1990). "[T]he Cruel and Unusual Punishments Clause deals exclusively with the criminal process and criminal punishments." *Palmer v. A.H. Robins Co.*, Inc., 684 P.2d 187, 217 (Colo. 1984). "First, it limits the kinds of punishment that can be imposed on those convicted of crimes; second, it proscribes punishment grossly disproportionate to the severity of the crime; and third, it imposes substantive limits on what can be made criminal and punished as such." *Id.* (internal quotation marks and citations omitted). "The primary purpose of [the Cruel and Unusual Punishments Clause] has always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes." *Id. See also People v. Stark*, 400 P.2d 923, 926-28 (Colo. 1965) ("[U]ntil some person has been convicted of a crime and a sentence has been imposed which is then asserted to be cruel and unusual there is no justiciable question presented."). Ms. Grove does not allege that she has been convicted of any crime. The Cruel and Unusual Punishments Clause "has no application to a civil proceeding involving a punitive damages claim ancillary to a civil cause of action." *Palmer*, 684 P.2d at 217. Ms. Grove's claim for violation of the Eighth Amendment is properly dismissed for failure to state a claim to which relief can be granted.

3.      Fifth Amendment Claim

Ms. Grove argues, but does not allege, violation of the Fifth Amendment to the U.S.

Constitution.  (*See* Doc. # 26, Doc. # 42 at 4 of 6, Doc. # 47 at 1 of 4).  The Fifth Amendment

protects against due process violations by the federal government.  *See Public Utilities Comm'n*

*v. Pollak*, 343 U.S. 451, 461 (1952) (Fifth Amendment applies to and restricts only the Federal

Government and not private persons).  There is no allegation in this civil action of any conduct

by federal government actors.  Defendants are or were employees of the Denver County

Sheriff's Office.  Ms. Grove fails to state a Fifth Amendment claim.


4.      First Amendment Claim

Ms. Grove alleges violation of her First Amendment rights.  (*See* Doc. # 26 at ¶¶ 7, 23,

26).  Ms. Grove claims that during the incident on May 17, 2012, "Deputy Moore assaulted

Grove, for 'being upset and crying,' which was a clear violation of her First Amendment rights

and tort law," causing her to suffer emotional and mental distress.  (*See* Doc. # 26 at ¶ 23; *see*

*also* ¶ 26).  The First Amendment relates to freedom of speech, religion, and association,

providing that "Congress shall make no law respecting an establishment of religion, or

prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the

right of the people peaceably to assemble, and to petition the Government for a redress of

grievances."  U.S. Const. amend. I.  In order for governmental action to trigger First Amendment

scrutiny, it must carry consequences that infringe protected speech.  *U.S. West, Inc. v. FCC*,

182 F.3d 1224, 1232 (10th Cir. 1999) ("As a threshold requirement for the application of the First

Amendment, the government action must abridge or restrict protected speech.").  There are no

allegations that any of the Defendants "attempted to control, compel, chill, deny, or otherwise

restrict or inhibit in any manner whatsoever the content, form, time, place or manner of any

speech by" Ms. Grove.  *Schmidt. v. Cline*, 127 F. Supp. 2d 1169, 1177 (D. Kan. 2000).  Ms.

Grove's free speech claim fails because she has not alleged what speech she engaged in or how Defendants' actions amounted to infringement on her First Amendment rights.  *See, e.g., Haverkamp v. Unified Sch. Dist. No. 380*, 689 F. Supp. 1055, 1058–59 (D. Kan. 1986) (dismissing plaintiff's first amendment claim where complaint did not indicate a restriction of plaintiff's first amendment rights).  A constitutional violation does not occur because Ms. Grove feels that she was wronged or treated unfairly.  Ms. Grove's conclusory allegation of a free speech violation falls far short of stating any claim under the First Amendment.  *See Ford v. West*, 222 F.3d 767, 773 (10th Cir. 2000) (holding plaintiff's conclusory allegations insufficient to state a First Amendment claim).

5.     Fourteenth Amendment Claim

To the extent that Ms. Grove alleges a claim under the Fourteenth Amendment (*see* Doc. # 26 at ¶¶ 7, the Fourteenth Amendment does not provide a remedy for her claims arising out of the alleged illegal search and seizure of her property.  Claims involving searches and seizures are governed by the Fourth Amendment, which secures the right against unreasonable seizures, and not the Fourteenth Amendment.  The Fourth Amendment to the U.S. Constitution provides that "[t]he right of the people to be secure in their persons, houses, paper, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. CONST. amend. IV.[1]  "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, . . . must be the guide for analyzing

---

[1]     The protections of the Fourth Amendment are made applicable to the states through the Fourteenth Amendment.  U.S. Const. amend. XIV;  *Michigan v. Summers*, 452 U.S. 692, 694 n. 2 (1981);  *Marshall v. Columbia Lea Regional Hosp.*, 345 F. 3d 1157, 1171 (10th Cir. 2003).

these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks and citation omitted).  The deprivations which Ms. Grove alleges arise out of the search and seizure of her property are protected under the Fourth Amendment and are thus properly analyzed under the reasonableness standard of the Fourth Amendment, rather than the Fourteenth Amendment.  *See, e.g., Arbuckle v. City of Chattanooga*, 696 F. Supp. 2d 907, 921 (E.D.Tenn. 2010) ("Where a plaintiff's claims under the Fourteenth Amendment arise out of a common nucleus of facts and pertain to an alleged wrongful search or seizure, it is appropriate to analyze such claims under the reasonableness standard of the Fourth Amendment instead of an analysis of substantive due process rights.") (citations omitted).  Ms. Grove does not allege any facts to support a claim for violation of due process under the Fourteenth Amendment.  To the extent that she alleges violation of her Fourteenth Amendment rights based on the search and seizure of her property, her claim is properly dismissed for failure to state a claim upon which relief can be granted.

6.      Fourth Amendment Claim

In her First Claim for Relief, Ms. Grove alleges "Unreasonable search and seizure of Plaintiff's property."  (*See* Doc. # 26 at 4 of 10).  Ms. Grove alleges that

> Plaintiff's home was unlawfully entered, by at least four armed sheriff deputies, McGill, Moore, Medina, and Rosenfeldt, and their hired workers.  They were not invited or given permission by Grove to trespass on her property or seize her possessions, clearly violating Plaintiff's Fourth Amendment rights and clearly established law. . . .

(*See* Doc. # 26 at ¶ 19).  By its plain language the Fourth Amendment only applies to "searches and seizures."  *See County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (citation omitted).  "A search takes place when governmental action infringes upon an individual's legitimate expectation of privacy, . . ."  *United States v. Curlin*, 638 F.3d 562, 565 7th Cir. 2011).

First, as Ms. Grove was not lawfully occupying the property at the time of the alleged search, she has no claim under the Fourth Amendment.  *See Curlin*, 638 F.3d at 565 (individual

occupying premises from which he had been evicted following a court action and who had received notice of the eviction had no legitimate expectation of privacy in the residence).  *See also United States v. Patrick*, 257 F. App'x 844, 847 (6th Cir. 2007) (holding that defendant had no legitimate expectation of privacy after she was evicted);  *United States v. Ross*, 43 F. App'x 751, 758 (6th Cir. 2002) (concluding that the defendant "had no reasonable expectation of privacy in an apartment to which he had no legal claim");  *United States v. Brown*, 961 F.2d 1039, 1041–42 (2d Cir. 1992) (noting in dicta that a defendant who has stopped paying rent and who has been evicted has no Fourth Amendment interest in the property searched);  *United States v. Jones*, No. 06-20343-Ma/P, 2011 WL 1770302, at * 4 (W.D. Tenn. March 12, 2011) (once a landlord has exercised his or her right to evict a tenant, the tenant can no longer possess an objectively reasonable expectation of privacy in the leased property);  *Buchanan v. State*, No. 772, 2010, 26 A.3d 213, at * 4 (Del. Supr. Aug. 8, 2011) (where Family Court had entered an order requiring defendant to be evicted, he had no expectation of privacy in the property because he had no legal right to be present on the property).

Ms. Grove also alleges that Defendants

> Moore and McGill grabbed her by the arms, Moore on the left, and McGill on the right, and forced her onto the back patio.  McGill said 'You need to settle down!' and began twisting Grove's right wrist into a painful position.  When she said, 'Ouch, please let go, you are hurting me', McGill sneared [sic], 'It's supposed to hurt!', and continued twisting Grove's arm.  She then threatened that if Grove would not settle down, she would take Grove to jail.

(*See* Doc. # 26 at ¶ 10).  To the extent that Ms. Grove might be alleging a seizure of her person, a "seizure" triggering the Fourth Amendment's protections occurs only when the officer has, "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen. . . ."  *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968).  Not every encounter between police and citizens is a seizure.  *See id.*;  *Graham v. Connor*, 490 U.S. 386, 396 (1989) (not every push or shove violates the Fourth Amendment).  The Fourth Amendment's "central requirement" is one of

reasonableness. *See Texas v. Brown*, 460 U.S. 730, 739 (1983). *See also Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989) (emphasizing that seizure "alone is not enough for § 1983 liability; the seizure must be unreasonable" (internal quotation marks omitted)). "[C]ourts have long recognized that the reasonableness of a seizure depends not just on why or when it is made, but also on how it is accomplished." *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009) (citation omitted). To state a constitutional violation, a plaintiff must allege both that a defendant's conduct constituted a seizure, and that the seizure was unreasonable. *Kernats v. O'Sullivan*, 35 F.3d 1171, 1177 (7th Cir. 1994).

The allegations indicate that on May 7, 2012, the Denver County Court issued a Writ of Restitution authorizing the Denver County Sheriff to "dispossess" Ms. Grove "and to deliver possession of the Property" to Wells Fargo and that an eviction notice was posted at the property on May 8, 2012. (*See* Doc. # 34-1).[2] One week later, on or about May 15, 2012, Defendant McGill "casually stopped by . . . to see how things were going," that is, to check on Ms. Grove's progress in moving out. (*See* Doc. # 26 at ¶ 8). When Defendants arrived at the property on May 17, 2012 to enforce the Writ of Restitution, Ms. Grove still had not packed her belongings or vacated the premises and "said she had movers coming on Saturday," two days later. (*See* Doc. # 26 at ¶ 8). When the Defendants told Ms. Grove her "time is up," she became "visibly upset and crying," she "became upset again, . . . threw down" a box, and that a mover claimed she threw a box at him. (*See* Doc. # 26 at ¶¶ 10-11). Defendants' Motion is properly granted as Ms. Grove does not state a claim to which relief can be granted for an unconstitutional seizure. By Ms. Grove's own allegations, she had advance notice of the Writ of Restitution and did not comply with Defendants' efforts to enforce it. At no time was Ms. Grove detained or arrested. As pled in the AC, Defendants had a reasonable interest in enforcing the

---

[2]     The court may take judicial notice of documents in the public record. *State Farm Mutual Automobile Insurance Co. v. Boellstorff*, 540 F.3d 1223, 1226 n. 7 (10th Cir. 2008).

Writ of Restitution.  Taking as true the circumstances pled by Ms. Grove and the allegation that she suffered "bruising and sprain" to her right wrist (*see* Doc. # 26 at ¶ 26), the brief grabbing of her arm is fundamentally insufficient to support her claim for a Fourth Amendment violation. *See Smith v. Dep't of Gen. Servcs, of Pa*., 181 F. App'x 327, 330 (3d Cir. 2006) ("the solitary act of momentarily grabbing [a plaintiff's] elbow was not a seizure for Fourth Amendment purposes");  *Burr v. Hasbrouck Heights Police Dep't*, 131 F. App'x 799, 803 (3d Cir. 2005) (holding officers who grabbed suspect's arms, causing small bruises, to prevent her from fleeing, did not use excessive force);  *Gottlieb v. Laurel Highlands Sch. Dist*., 272 F.3d 168, 172 (3d Cir. 2001) (holding that a school administrator pushing a student backwards into a door jam was not the "type of detention or physical restraint that we require to effectuate a seizure" under the Fourth Amendment);  *Treiber v. Rompala*, No. 01–5049, 2002 U.S. Dist. LEXIS 12650, at *14, 2002 WL 1467673 (N.D.Ill. Jul. 10, 2002) (granting qualified immunity to police officer who grabbed junior officer's arm, explaining that "a reasonable officer in [the defendant's] position would not have considered that [the plaintiff's] constitutional rights were in jeopardy when he allegedly grabbed and twisted her arm").

Further, Defendants are entitled to absolute, or quasi-judicial, immunity from Ms. Grove's Fourth Amendment claim against them.  "[O]fficials charged with the duty of executing a facially valid court order enjoy absolute immunity from liability for damages in a suit challenging conduct prescribed by that order."  *Moss v. Kopp*, 559 F.3d 1155, 1163 (10th Cir. 2009) (internal quotation marks and citation omitted).  *See also Curry v. Castillo*, 297 F.3d 940, 947 (9th Cir. 2002) (Quasi-judicial immunity derives from the long-recognized common law doctrine of judicial immunity and protects nonjudicial officers from "claims relating to the exercise of judicial functions.");  *Valdez v. City and Cnty. of Denve*r, 878 F.2d 1285, 1289 (10th Cir.1989) (quasi-judicial immunity protects officials from being "called upon to answer for the legality of decisions which they are powerless to control").  "[F]or an officer acting pursuant to a court order

to be entitled to absolute immunity the following factors must be met: the judge issuing the disputed order must be immune from liability in his or her own rights, the officials executing the order must act within the scope of their own jurisdiction, and the officials must only act as prescribed by the order in question." *Dillard v. Gregory*, No. 11-cv-01928-RBJ-BNB, 2012 WL 5056932, at * 6 (D. Colo. Oct. 8, 2012) (internal quotation marks and citation omitted).

Here, the Denver County Court judge would be entitled to absolute judicial immunity, as there are no allegations, arguments, or grounds that the judge acted in the clear absence of all jurisdiction. *See Turney v. O'Toole*, 898 F.2d 1470, 1474 (10th Cir. 1990) ("a state official is not absolutely immune from damages arising from the execution of an order issued by a judge acting in the clear absence of all jurisdiction.") (internal quotation marks and citations omitted). Second, contrary to Ms. Grove's argument, the Writ of Restitution was issued by the court and facially valid. (*See* Doc. # 47 at 2 of 4; Doc. # 34-1). "Colorado law provides that writs of restitution 'may be executed by the county sheriff's office in which the property is located by a sheriff, under sheriff, or deputy sheriff.' " *Dillard*, 2012 WL 5056932, at * 7 (quoting Colo. Rev. Stat. § 13–40–122(1)). "[A]n order issued from the Denver District Court for officers to perform a function with their statutory duties qualifies as 'facially valid.' " *Id.* Ms. Grove's conclusory argument is insufficient to challenge the facially valid Writ of Restitution.

Third, the allegations in the AC do not suggest that Defendants' actions were outside the scope of their jurisdiction. Finally, the Writ of Restitution specifically ordered Defendants to "dispossess" Ms. Grove and "to deliver possession of the Property to" Wells Fargo. (*See* Doc. # 34-1). The allegations indicate that Defendants' actions were within the confines of the court's Order. In sum, Defendants are entitled to absolute, or quasi-judicial, immunity. *See Dillard*, 2012 WL 5056932, at * 8; *Duenas v. Freitas*, No. C 13-0836 SBA, 2013 WL 3298249, at * 5 (N.D. Cal. June 28, 2013) (because sole allegations against the Sheriff Defendants related to mandatory duty to enforce Superior Court's Writ of Possession, they were entitled to absolute

12

immunity from Plaintiffs' claims.) (citations omitted);  *Udeh v. Messerman*, No. 95-2536, 1995

WL 596160, at * 1 (E.D. Pa. Oct. 5, 1995) (absent some allegation or proof that defendant

exceeded the writ or actually knew that the writ was invalid, officer who performed his duty by

carrying out a facially valid court order of eviction is plainly entitled to an immunity defense).  In

sum, Ms. Grove's allegations are not sufficient, as a matter of law, to support a claim for

violation of her Fourth Amendment rights.


       7.    Personal Participation

      Ms. Grove sues all of the Defendants in both their individual and official capacities.  (*See*

Doc. # 26 at 1, 8 of 10).  Contrary to Ms. Grove's incorrect statement of the law (*see* Doc. # 42

at 5 of 6), to the extent that she is suing Defendants in their individual capacities, personal

participation in the constitutional violation is an essential allegation in a civil rights action brought

under § 1983.  *See Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157

(10th Cir. 2001) (for § 1983 claim, affirmative link between the defendant's conduct and any

constitutional violation "must be alleged in the complaint as well as proven at trial");  *Mitchell v.

Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) ("personal participation is an essential element in

a § 1983 claim") (internal quotation marks and citation omitted);  *Bennett v. Passic*, 545 F.2d

1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983

claim.").

      Ms. Grove states no facts from which it may be inferred that Defendants Rosenfeldt or

Medina personally participated in any of the alleged violations.  She does not allege any specific

conduct by Defendants Rosenfeldt or Medina.  (*See* Doc. # 26 at ¶ 17).  Ms. Grove alleges only

that Defendant Rosenfeldt was acting in his capacity as a sheriff deputy for the City and County

of Denver.  Ms. Grove alleges only that Defendant Medina made two statements: "SHE didn't

have to!" and "No, your time is up."  (*See* Doc. # 26 at 2-3 of 10, ¶¶ 8, 9).  As to the loss of any

property, Ms. Grove specifically alleges that she "can only surmise that the thieves were related to and/or amongst the workers from Cowboy Moving and Storage who had ravaged her home the day before." (*See* Doc. # 26 at ¶ 12).  She does not allege that any of the Defendants took her property.  The allegations do not adequately identify what actions Defendants Rosenfeldt or Medina  took that give rise to any constitutional violation.  Ms. Grove does not state a claim to which relief can be granted against Defendants Rosenfeldt or Medina in their individual capacities.

8.      Liability of Defendants in their Official Capacities

Ms. Grove sues all of the Defendants in both their individual and official capacities as Denver County Sheriffs.  (*See* Doc. # 26 at 1, 8 of 10).  To the extent that Ms. Grove sues Defendants in their official capacities, "a judgment against a public servant in his official capacity imposes liability on the entity he represents . . . ." *Brandon v. Holt*, 469 U.S. 464, 471-73 (1985) (internal quotation marks and citation omitted).  *See also Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998) ("[a]n action against a person in his official capacity is, in reality, an action against the government entity for whom the person works.").

Municipalities and other local government entities such as counties are "persons" under § 1983, and can therefore be sued for their constitutional torts*. Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978).  The Sheriff of Denver County has the right of control over the Denver County Deputy Sheriffs and may be held liable for their actions.  *Seeley v. Board of County Commissioners*, 791 P.2d 696 (Colo. 1990) (citing Colo. Rev. Stat. § 30-10-506). However, a municipality or other governmental entity "can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue.  Respondeat superior or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694-95, 698).

Municipalities may be held liable under § 1983 only when a constitutional deprivation is inflicted pursuant to a government's policy or custom.  *See Monell*, 436 U.S. at 690-91, 694 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.").  An unconstitutional deprivation is caused by a municipal "policy" if it results from decisions of a duly constituted legislative body or an official whose acts may fairly be said to be those of the municipality itself.  *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403-04 (1997).  *See also Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988) ("For a county to be held responsible, it must have caused the harm through the execution of its own policy or custom by those whose edicts or acts may fairly be said to represent official policy.") (citing *Monell*, 436 U.S. at 694).  In order to hold Defendants liable in their official capacities under § 1983, Ms. Grove must allege that "(1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation."  *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998) (citing *Monell*, 436 U.S. at 694).  *See also Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir.1996) ("To establish municipal liability, a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged.").

First, as the court has determined that Ms. Grove fails to allege the requisite predicate of showing an underlying constitutional violation, she fails to state a claim for relief against Defendants in their official capacities.  *See Estate of Larsen ex. Rel Sturdivan v. Murr*, 511 F.3d 1255, 1264 (10th Cir. 2008) ("without the predicate constitutional harm inflicted by an officer, no municipal liability exists") (citation omitted);  *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004) (same) (citation omitted);  *See also Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317-18 (10th Cir. 2002) ("We will not hold a municipality liable [for constitutional violations] when there was no underlying constitutional violation by any of its officers.") (internal quotation marks

and citation omitted); *Ricciuti v. New York City Transit Authority*, 124 F.3d 123, 132 (2d Cir. 1997) ("a claim of inadequate training and supervision under § 1983 cannot be made out against a supervisory body without a finding of a constitutional violation by the persons supervised") (citation omitted); *Wilson v. Meeks*, 98 F.3d 1247, 1255 (10th Cir. 1996) ("a municipality may not be held liable where there was no underlying constitutional violation by any of its officers.").

Second, Ms. Grove merely conclusorily alleges that a search and seizure of her property was "committed pursuant to a custom[,] practice or policy." (*See* Doc. # 26 at ¶ 19). "[I]n *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal policy or custom that caused the plaintiff's injury." *Board County Com'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403 (1997) (internal quotation marks and citations omitted). "Locating a policy ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bryan County*, 520 U.S. at 403-04.

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bryan County*, 520 U.S. at 404.

> [M]unicipal liability under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. Municipal liability may be based on a formal regulation or policy statement, or it may be based on an informal custom so long as this custom amounts to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage' with the force of law. Municipal liability may be also be based on the decisions of employees with final policymaking authority or the ratification by such final policymakers of the decisions-and the basis for them-of subordinates to

whom authority was delegated subject to these policymakers' review and approval. Finally, municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1188-89 (10th Cir. 2010) (internal quotation marks and citations omitted).

Ms. Grove does not identify any policy, practice, or custom of the Denver County Sheriff's Office. She alleges no specific conduct apart from that of the individual Defendants and no facts to suggest a direct causal link between any action of the government entity and a constitutional violation. *See Bryan County*, 520 U.S. at 404. She does not allege that an official deliberately chose a course of action, that there was a formal regulation, policy, or custom of widespread practice, that Defendants' decisions were ratified by final policymakers, or allege any injury caused by a failure to adequately train or supervise employees. Ms. Grove's allegations are insufficient to state a claim against Defendants in their official capacities. *See, e.g., Martin v. Dist. of Columbia*, 720 F. Supp.2d 19, 23 (D.D.C. 2010) (granting city's motion to dismiss § 1983 claim based on inadequate training when allegations did "nothing more than recite the required causal elements of custom or policy liability based on deliberate indifference" and plaintiff's "conclusory statements" were "unsupported by additional factual allegations").

Third, Ms. Grove bases her claim against on a single incident, not a pattern of violations of citizens' constitutional rights based on any custom or policy. *See Bryan County*, 520 U.S. at 408. "When a policy is not unconstitutional in itself, the county cannot be held liable solely on a showing of a single incident of unconstitutional activity." *Meade*, 841 F.2d at 1529 (citation omitted). "Where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." *Moss*, 559 F.3d at 1169 (citation omitted). *See also Butler v. City of Norman*, 992 F.2d 1053,

1055 (10th Cir. 1993) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under [Monell] unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").  Ms. Grove does not allege that she was injured by a particular illegal course of action taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the local government entity.  In sum, Ms. Grove fails to allege sufficient facts to establish an unconstitutional custom, practice, or policy or a direct causal connection between a custom or policy at the Denver County Sheriff's Office and the alleged constitutional violation.  Ms. Grove does not state a claim to which relief can be granted against Defendants in their official capacities.

B.    Additional Federal Claims

In addition to her § 1983 claims, Ms. Grove alleges that she "brings this action pursuant to sections . . . 1985, 1986, and 1988, . . ." (*See* Doc. # 26 at ¶ 6).  Section 1985 outlaws various classes of conspiratorial activity. *Kush v. Rutledge*, 460 U.S. 719, 724 (1983).  Section 1985 proscribes any conspiracy to: (1) prevent an officer from performing duties; (2) obstruct justice, or intimidate a party, witness or juror; and (3) deprive persons of rights or privileges.  Ms. Grove has provided no facts to support an inference that some plan or joint action existed between any of the Defendants. *See Crabtree By and Through Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990) ("[T]he rule is clear that allegations of conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action."); *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir.1990) ("The participants in the conspiracy must share the general conspiratorial objective . . . [t]o demonstrate the existence of a conspiratorial agreement it simply must be shown that there was a single plan, the essential nature and general scope of which [was] know[n] to each person who is to be held responsible

for its consequences.") (internal quotation marks and citation omitted);  *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) ("Because plaintiff failed to allege specific facts showing agreement and concerted action among defendants, the district court properly dismissed the conspiracy claim with prejudice.").  Nor has Ms. Grove alleged any racial or class-based discriminatory animus.  *See Daigle v. Gulf State Utilities Co., Local No. 2286*, 794 F.2d 974, 978–79 (5th Cir.1986) (§ 1985(2) and (3) require some class-based invidiously discriminatory animus behind conspirators' actions).  Ms. Grove has not set forth any allegations to support a § 1985 claim and mere recitation of a statutory section is insufficient to state a claim for relief.

Since a § 1986 claim is premised upon the existence of a valid § 1985 claim, any § 1986 claim Ms. Grove alleges also fails.  *See Wright v. No Skiter Inc.*, 774 F.2d 422, 426 (10th Cir. 1985) (claim under § 1986 "depends on the existence of a valid claim under § 1985").  *See also Mollnow v. Carlton*, 716 F.2d 627, 632 (9th Cir.1983) ("Section 1986 depends on the existence of a claim under § 1985.");  *Dowsey v. Wilkins*, 467 F.2d 1022, 1026 (5th Cir. 1972) ("Because of a failure to establish any § 1985 right, the interrelated, dependent cause of action under Section 1986 was also correctly dismissed.").

Section 1988 neither creates rights nor confers jurisdiction.  *Barr v. United States*, 478 F.2d 1152 (10th Cir. 1973).  *See also Moor v. Alameda County*, 411 U.S. 693, 702 (1973) (Section 1988 does not create an independent cause of action for the protection of civil rights). Since Ms. Grove has failed to state a claim under §§ 1983 or 1985, she is not entitled to the relief that is provided in § 1988.  *Schroder v. Volcker*, 646 F. Supp. 132, 136 (D. Colo. 1986). Further, *pro se* litigants such as Ms. Grove may not recover an award of attorney's fees pursuant to § 1988.  *Turman v. Tuttle*, 711 F.2d 148, 149 (10th Cir. 1983).  To the extent that Ms. Grove is alleging claims pursuant to 42 U.S.C. §§ 1985, 1986, and 1988, such claims are properly dismissed for failure to state a claim to which relief can be granted.

C.     Qualified Immunity

Defendants in their individual capacities raise the defense of qualified immunity to Plaintiffs' claims.  Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).  "In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (internal quotation marks and citation omitted).  "[C]ourts have discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*  "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry.  *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted).

As the court has concluded in this Recommendation that Ms. Grove fails to state a claim upon which relief can be granted for any constitutional violation, the court need not reach the "clearly established" prong of qualified immunity to conclude that dismissal is correctly granted in favor of the Defendants in their individual capacities.  *See Wilder*, 490 F.3d at 815 (instructing district court on remand to enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his burden to show violation of a constitutional right).  Where no constitutional  violation is stated, "the inquiry ends and the officer is entitled to qualified immunity." *Wilder*, 490 F.3d at 813.

C.     State Law Claims

1.     The CGIA

Ms. Grove brings her Fourth and Fifth Claims for Relief pursuant to, presumably,

supplemental jurisdiction.  (*See* Doc. # 26 at ¶¶ 28-34).  Defendants move to dismiss these two

claims for failure to timely comply with the notice requirements of the CGIA, Colo. Rev. Stat. §

24-10-109(1) (2012).  The notice requirements of the CGIA provide that:

> [a]ny person claiming to have suffered an injury by a public entity or by an
> employee thereof while in the course of such employment, whether or not by a
> willful and wanton act or omission, shall file a written notice as provided in this
> section within one hundred eighty-two days after the date of the discovery of the
> injury, regardless of whether the person then knew all of the elements of a claim or
> of a cause of action for such injury.  Compliance with the provisions of this section
> shall be a jurisdictional prerequisite to any action brought under the provisions of
> this article, and failure of compliance shall forever bar any such action.

Colo. Rev. Stat. § 24–10–109(1) (2012).

The statutory notice provisions of the CGIA apply when federal courts hear Colorado tort

claims under supplemental jurisdiction.  *Renalde v. City & County of Denver, Colo.*, 807 F.

Supp. 668, 675 (D. Colo.1992) (holding that Colorado tort claims brought by a private plaintiff

under pendent jurisdiction are subject to the notice provisions of the CGIA as a jurisdictional

prerequisite to suit).  Compliance with the provisions of the CGIA "shall be a jurisdictional

prerequisite to any action brought under the provisions of this article, and failure of compliance

shall forever bar any such action."  See Colo. Rev. Stat. § 24–10–109(1) (2012).  As the party

asserting jurisdiction, Ms. Grove bears the burden of establishing that this court has jurisdiction

to hear her claims.  *American Fair Credit Ass'n v. United Credit Nat. Bank*, 132 F. Supp. 2d

1304,1308-09 (D. Colo. 2001) (citation omitted).  "Mere conclusory allegations of jurisdiction are

not enough; the party pleading jurisdiction must allege in his pleading the facts essential to show

jurisdiction." *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994) (internal quotation marks and

citations omitted).

Ms. Grove has not alleged compliance with the CGIA notice provisions or addressed the

CGIA notice requirement in her responses to Defendants' Motion.  "When a plaintiff fails to

plead compliance with the CGIA, and a court addresses the case in the context of a motion to

dismiss, the court must accept as a matter of 'fact' that the plaintiff failed to comply with the notice provisions." *Aspen Orthopaedics & Sports Medicine, LLC v. Aspen Valley Hospital District*, 353 F.3d 832, 840 (10th Cir. 2003).  The court lacks subject matter jurisdiction over Ms. Grove's state law claims.

       2.    Supplemental Jurisdiction

Title 28 U.S.C. § 1367(a) grants supplemental or pendent jurisdiction to federal district courts over a plaintiff's state law claims which arise out of the same transaction or occurrence as the federal claims.  A district court has the discretion to decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  *See also Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").  The court recommends dismissal of Ms. Grove's § 1983 claims, the only claims over which this court could have had original jurisdiction.  The court may also decline to exercise jurisdiction over Ms. Grove's supplemental state law claims of "Tort law . . . Tortious Assault and Battery . . . Negligence . . . Tortious Negligence . . ., and the tort of Intentional Infliction of Mental Distress."  (*See* Doc. # 26 at ¶¶ 23, 27, 31, 34).

Accordingly, IT IS RECOMMENDED that "Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1)" (filed April 17, 2013) (Doc. # 34) be GRANTED, Ms. Grove's federal claims be dismissed for failure to state a claim to which relief can be granted, Ms. Grove's state law claims be dismissed without prejudice for lack of subject matter jurisdiction, as barred by the Colorado Governmental Immunity Act, and this civil action be

dismissed in its entirety.[3]

**Advisement to the Parties**

Within **fourteen days** after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the District Court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real

Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir.

1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the

Magistrate Judge's proposed findings and recommendations and will result in a waiver of the

right to appeal from a judgment of the district court based on the proposed findings and

recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th

Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo*

despite the lack of an objection does not preclude application of the "firm waiver rule");

*International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901,

904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order,

cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United

States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived

---

[3]      "Generally, a dismissal for lack of subject matter jurisdiction is without prejudice and does not have a preclusive effect."  *Garman v. Campbell County Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2010).

their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418

F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice

require review).

DATED at Denver, Colorado, this 16th day of September, 2013.

BY THE COURT:

   s/Craig B. Shaffer
United States Magistrate Judge